# Louchheim Brothers *versus* Henzey, Administrator.

1. A sheriff's sale is not necessarily void because of the two judgments under which it is made one is in fraud of the Bankrupt Act.

2. The passive non-resistance of a debtor to the recovery of a judgment against him is not necessarily a fraud upon the Bankrupt Act, although he may be insolvent in contemplation of that act.

3. The fact that a portion of a lot of goods sold at a sheriff's sale were brought within the reach of the execution only shortly before the sale, and that very soon thereafter a petition in bankruptcy was filed, does not invalidate the sale.

February 26th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county :* Of January Term 1877, No. 461.

Trespass brought by Henry S. and Joseph Louchheim, trading as Louchheim Brothers, against Edgar M. Gregory, United States Marshal, for an illegal seizure of goods. The action was originally brought in the Supreme Court at Nisi Prius. At the trial it appeared that Henry S. Louchheim, individually, and the Louchheim Brothers, had in December 1869, each brought suit against Nathan Kahn, and on the 27th of that month judgments were obtained by the first for $3677.83 and the last for $2675.30 for want of affidavits of defence. Executions issued on these judgments and Kahn's stock of goods in a store were sold by the sheriff and bought by the plaintiffs for $567.58, who employed a son of Kahn to carry on the business for them. Among the goods sold were some which Kahn had brought in November 1869 from Ohio, where he had had another store. On the 7th of January 1870, two days after the sale, a petition in bankruptcy was filed by other creditors of Kahn, and on the 25th of the same month he was adjudged a bankrupt, and by the direction of these creditors the marshal seized the goods sold at the sheriff's sale and which still remained in Kahn's store. He delivered them to the assignee in bankruptcy, who sold them for $1853.70. This action was then brought against the marshal, who having died during the foregoing proceedings, his administrator Henzey, was substituted in his place. At a former trial of this case the court instructed the jury that

if the plaintiffs were active in procuring a preference by judgments and executions, knowing Kahn to be insolvent, the preference was in fraud of the bankrupt law, and the sheriff's sale passed no title. The verdict and judgment were for the defendant, which this court reversed: see 27 P. F. Smith 305. At the second trial the defendant, among others, submitted the following point:

" That if the jury believe that Nathan Kahn, with a desire to prefer Louchheim Brothers or Henry S. Louchheim, failed to make a defence to plaintiffs' suit, which by law he was entitled to make, or caused goods to be brought within the reach of the execution, then there was sufficient under the Bankrupt Act to invalidate the whole transaction and the sheriff's sale, and the verdict must be for the defendant."

The court answered: " This point is affirmed; with the qualification that the jury must be satisfied from the evidence of such desire and such acts." Verdict and judgment for defendant and plaintiffs taking this writ, assigned, inter alia, for error the answer to the foregoing point.

*George L. Crawford*, for the plaintiffs in error.—A preference is not *per se* a fraud: In re John Riorden, 14 N. B. R. 332. To invalidate a preference under the Bankrupt Act there must be some positive act done by the debtor, not a mere omission to act with a desire to prefer: Wright v. Filley, 1 Dillon 172; Wilson v. City Bank, 17 Wall. 473; Clark v. Iselin, 21 Id. 360; Sleek v. Turners' Ass., 26 P. F. Smith 142; Louchheim v. Henzey, 27 Id. 305; Kemmerer v. Tool, 28 Id. 151.

*Thomas J. Diehl, Samuel Dickson* and *John C. Bullitt*, for defendants in error.—This court reversed the judgment in the previous trial of this case on the ground that the question of fraud and collusion on the part of Kahn should have been left to the jury. Here that question was left to them and in the language of the ruling in Wilson v. City Bank, *supra*. In permitting the recovery of these judgments Kahn was guilty of procurement within the meaning of the bankrupt act.

[SHARSWOOD, J.—If he is guilty of mere passivity?]

No, but if the creditor attempts to do that which he is not entitled to do, and the debtor permits him, it is not mere passivity.

Mr. Justice MERCER delivered the opinion of the court, May 6th 1878.

This was an action of trespass, brought by the plaintiffs in error, for the wrongful taking and selling of their personal property. They claimed title to the same through a purchase made at sheriff's sale, on the 5th of January 1870, as the property of one Nathan Kahn. Two days after the sheriff's sale, a creditor of Kahn filed

[Loucheim Brothers *v.* Henzey.]

a petition in bankruptcy against him, and on the 25th January 1870 he was adjudged a bankrupt. The defendant, who was the United States marshal, seized and sold the same property by virtue of the proceedings in bankruptcy. The right of the parties depend on the effect to be given to the sheriff's sale.

The plaintiff in error relies on the third assignment only. This covers the answer of the court to the fifth point submitted by the defendant. The court charged that if the jury was satisfied from the evidence that Kahn, with a desire to prefer the plaintiff, in either of the judgments on which the sale was made, failed to make a defence to the plaintiff's suit, which by law he was entitled to make, or caused goods to brought within the reach of the executions, then there was sufficient, under the Bankrupt Act, to invalidate the whole transaction and the sheriff's sale; and the verdict must be for the defendant.

When this case was here before, 27 P. F. Smith 305, it was held that the proceedings under the judgments and executions were not *per se* in fraud of the bankrupt law, but were questions of fact for the jury. This fifth point presents two distinct propositions, stated disjunctively, each of which was affirmed. Neither one presents the question of Kahn's intending to defraud any of his creditors, nor of any collusion of the plaintiffs in the judgments, with him; but, in effect, the answer declares, that either of the facts stated constitutes an implied fraud on the bankrupt law. The sale was made by virtue of executions issued on two judgments, yet the jury was told if Kahn, with a desire to prefer either plaintiff, failed to make defence to the plaintiff's suit, which by law he was entitled to make, they should find for the defendant. The failure to make defence in either one "invalidated the whole transaction." As a legal proposition we think this is not correct. In contemplation of law each judgment stands on its own merits. The fact that one of the plaintiffs was interested in both judgments does not change the rule of law as to their separate effect, although it may increase the probability as to the facts alleged. It is not clear to our mind exactly what idea the court intended to convey to the jury when he refers to the defence which by law Kahn was entitled to make. It appears the judgments were taken for want of affidavits of defence. Did the court mean that if Kahn had no other defence than one purely technical, that he was bound to interpose it; or was it intended to limit the requirement to defending against a debt not honestly and justly due? If the debt was justly due, I know of no law requiring him to actively resist a recovery. His passive non-resistance is not necessarily a fraud on the bankrupt law, although he may be insolvent in contemplation of that act: Wilson *v.* City Bank, 17 Wallace 473; Sleek *v.* Turner, 26 P. F. Smith 142; Kemmerer *v.* Tool, 28 Id. 147.

The other objectionable part of the answer is, "or caused goods

[Louchheim Brothers *v.* Henzey ]

to be brought within the reach of the execution" is "sufficient to invalidate the whole transaction and the sheriff's sale." Thus this one act is by itself alone declared to be sufficient to taint and corrupt the whole transaction. The validity of the debts may have been unquestionable. The judgments may have been recovered in undoubted good faith. The executions may have issued with the most pure intentions. Kahn may not only have honestly owed the debts, but may have been under the highest legal and moral obligation to pay them; yet, according to this answer, if he " caused goods to be brought" within reach of the executions, it invalidated all the plaintiff's rights in the property purchased at sheriff's sale. He need not have caused all the goods sold by the sheriff, nor all taken by the defendant, "to be brought within reach of the execution," but any part of them, to vitiate the whole sale.

It is an important fact in this case that the sheriff's sale was made before any proceedings in bankruptcy were instituted against Kahn. The mere existence, on the statute book of the bankrupt law, did not prevent a levy and sale.

If neither the judgments nor the sales were fraudulent in fact, the latter gave a good title to the purchaser. In that case the assignee in bankruptcy could not follow the property, but must resort to the fund produced by the sale : Rohrer's Appeal, 12 P. F. Smith 498.

Judgment reversed, and a *venire facias de novo* awarded.